**Gen. 153]** **153**

## CONSTITUTIONAL LAW

**SEARCH AND SEIZURE – CANNABIS – WHETHER THE PARTIAL LEGALIZATION OF CANNABIS UNDER MARYLAND LAW WILL AFFECT THE AUTHORITY OF MARYLAND POLICE OFFICERS TO CONDUCT SEARCHES BASED ON THE ODOR OF CANNABIS**

December 1, 2022

*The Honorable Bill Ferguson*
*President of the Senate of Maryland*

*The Honorable Adrienne A. Jones*
*Speaker of the House of Delegates of Maryland*

At the November 2022 general election, Maryland voters ratified an amendment to the Maryland Constitution to allow individuals who are 21 or older to legally possess and use cannabis beginning on July 1, 2023, subject to further regulation and restriction by the General Assembly.[1]  Because of restrictions already enacted by the General Assembly that were contingent on passage of the constitutional amendment, the practical result of that amendment will be the *partial* legalization, not the full legalization, of cannabis for those over 21 years of age.  More specifically, that legislation will, starting July 1, allow an adult over 21 to possess up to 1.5 ounces of cannabis without penalty.  Possession of more than 1.5 ounces but less than 2.5 ounces will be a civil offense, and possession of 2.5 ounces or more will remain a crime.  The General Assembly has requested our opinion on "the impact of cannabis legalization on the authority of police officers to conduct searches of individuals and vehicles based on detection of the odor of burnt or unburnt cannabis, including in cases involving suspicion of possession with intent to distribute cannabis, growing or manufacturing cannabis or cannabis products, or driving under the influence of cannabis."  2022 Md. Laws, ch. 26, § 12.

Absent action by the General Assembly to impose limits on police searches beyond what the United States Constitution or the Maryland Constitution would require, these are questions that the courts will ultimately have to resolve.  All we can do is predict, as best we can, how the courts will resolve the questions, using the

---

[1] Effective June 1, 2022, the term "cannabis" replaced all references to "marijuana" in the Maryland Annotated Code.  2022 Md. Laws, ch. 26, §§ 13, 19.  Thus, we use the term "cannabis," rather than "marijuana," throughout this opinion.

limited body of existing precedent from the Court of Appeals of Maryland[2] as our most important guide. Under Maryland's current statutory scheme, which has decriminalized but not legalized some possession and use of recreational cannabis and will remain largely in effect until July 1, 2023, the Court has said that the odor of cannabis, standing alone, authorizes a police officer to search a *vehicle* but does not allow an officer to arrest and search a *person*. In transitioning to the impending partial legalization regime, the most difficult question is whether, once some use and possession of cannabis becomes legal on July 1, the odor of cannabis emanating from a vehicle, standing alone, will still authorize a police officer to search a vehicle, though there are other questions that we examine as well.

Based on existing precedent, it is our opinion that, although not entirely clear, the Court of Appeals is more likely to hold that the odor of cannabis emanating from a vehicle will still justify a police officer's search of that vehicle after July 1, 2023. We realize it might seem counterintuitive, at first glance, that the odor of a drug that will often be legal to possess under Maryland law would justify such a search. But a closer look at the Court's precedents suggests that the Court is more likely to reach that conclusion. That is because, to conduct a search of a vehicle under the Constitution, an officer needs only probable cause to believe that the *vehicle* contains evidence of a crime, not that a person in the vehicle has committed or is committing a crime. And, even after Maryland eliminated criminal penalties for the possession and use of some amount of recreational cannabis in 2014, the Court of Appeals has still found that the odor of cannabis coming from a vehicle provides probable cause to believe that the vehicle may contain evidence of crimes such as possession of a criminal amount of cannabis, driving under the influence of cannabis, possession of cannabis with the intent to distribute, and the illegal distribution of cannabis. Because all those crimes will remain on the books under the new partial legalization regime (and because probable cause requires only a fair probability, not a more-than-fifty-percent likelihood, that evidence of a crime is present in the vehicle), we cannot say that the Court would depart from its prior reasoning after July 1.

---

[2] At the November 2022 election, Maryland voters also ratified an amendment that will change the name of the Court of Appeals of Maryland to the Supreme Court of Maryland and will change the name of the Court of Special Appeals to the Appellate Court of Maryland. But because the final steps in the process for amending the Constitution have not yet been completed, *see* Md. Const., Art. XIV, § 1 (requiring a proclamation by the Governor), we will continue to refer to these courts by their soon-to-be obsolete names.

That is especially true given that the General Assembly has not yet set up a legal marketplace for the sale of recreational cannabis in Maryland, which means that cannabis found in a vehicle will presumably often be evidence of the illegal sale of cannabis, even if the dealer is not in the vehicle.

To be clear, however, the odor of cannabis coming from a vehicle will not, standing alone, authorize a police officer's search of the vehicle's *occupants*.  We also note that the partial legalization of cannabis calls into question the authority of police officers to use canines that are trained to detect the odor of cannabis to establish probable cause to search a vehicle.  Under current law, canine sniffs are ordinarily not considered "searches" under the Constitution because they can reveal only the presence or absence of contraband and, thus, do not invade any reasonable expectation of privacy.  But, once the law changes so that only certain amounts of cannabis will be contraband, the use of a police canine to sniff for cannabis may itself constitute a search, which would require probable cause from some other source, rather than serve as the basis for probable cause.

Outside of the vehicle context, the odor of cannabis emanating from an individual, without more, will not justify a police officer's arrest and search of that person.  After all, even before the State's partial legalization scheme has taken effect, the Court of Appeals has already said that the odor of cannabis, by itself, does not give an officer probable cause to make an arrest and conduct a search incident to that arrest.  But the odor of cannabis will likely still permit a police officer to briefly detain the person to investigate whether they have a criminal amount of cannabis.  And the odor of cannabis will still be a factor that may contribute, under the totality of the circumstances, to an officer's authority to arrest and search a person.

# I
## Background

For decades, the possession or use of any amount of cannabis in Maryland was a crime punishable by incarceration and a fine. *See, e.g.*, Md. Code Ann., Crim. Law ("CL") § 5-601 (2012 Repl. Vol.) (criminalizing the possession of a "controlled dangerous substance"); *id*. § 5-101(f) (defining "controlled dangerous substance" to include a drug listed in Schedule I of the Maryland controlled dangerous substances statute), § 5-402(d)(1)(vii) (including cannabis within Schedule I); *see also id*. § 5-402(a)(3) (providing that Schedule I under Maryland law consists of each

controlled dangerous substance that the federal government has designated a Schedule I controlled dangerous substance); 21 U.S.C. § 812, Schedule I (c)(10) (listing "[m]arihuana"—what Maryland law now refers to as cannabis—as a Schedule I drug under the federal statute).[3]

In 2014, the General Assembly decriminalized—but did not legalize—the use or possession of less than 10 grams (about 0.35 ounces) of cannabis. 2014 Md. Laws, ch. 158 (codified at CL § 5-601(c)(2)); *Robinson v. State*, 451 Md. 94, 96-97 (2017). Under this law, which is still in effect, the use or possession of less than 10 grams of cannabis is no longer a crime punishable by incarceration but a civil offense for which an individual may be fined. CL § 5-601(c)(2).[4] The use or possession of 10 grams or more of cannabis remains a crime, punishable by both incarceration and a fine. *Id.*

Since 2014, the General Assembly has also expanded Maryland's medical cannabis program and clarified that cannabis does not include hemp. As to medical cannabis, the General Assembly in 2014 authorized licensed dispensaries to provide medical cannabis to card-carrying patients. 2014 Md. Laws, ch. 256. To accommodate the use of cannabis for medical purposes, Maryland's criminal laws now recognize several affirmative defenses for the use or possession of cannabis for "medical necessity" or for "palliative relief from [a] debilitating medical condition." *See* CL § 5-601(c)(3)(ii) (providing that, in a prosecution for criminal use or possession of cannabis, a court must dismiss the charge upon finding that the person used or possessed cannabis because of "medical necessity"), § 5-601(c)(3)(iii)(1) (providing for an affirmative defense when the use or possession of cannabis is for "therapeutic or palliative relief from [a] debilitating medical condition"). Section 13-3313(a) of the Health-

---

[3] Under federal law, a substance is classified as a Schedule I drug if: "(A) [t]he drug or other substance has a high potential for abuse"; "(B) [t]he drug or other substance has no currently accepted medical use in treatment in the United States"; and "(C) [t]here is a lack of accepted safety for use of the drug or other substance under medical supervision." 21 U.S.C. § 812(b)(1).

[4] If the person using or possessing less than 10 grams of cannabis is under 21, a court must also order the person to attend a drug education program, refer the person to an assessment for substance abuse disorder, and, if necessary, refer the person to substance abuse treatment. CL § 5-601(c)(2)(ii)(4)(A). These additional consequences apply also to the third or subsequent offense committed by a person who is 21 or older. CL § 5-601(c)(2)(ii)(4)(B).

General Article also provides that a patient or caregiver of a patient using medical cannabis may not be subject to arrest, prosecution, or any civil or administrative penalty so long as the person acts in accordance with the State's medical cannabis laws.

As for hemp, the General Assembly in 2015 legalized industrial hemp, which it defined to mean "the plant Cannabis sativa L. and any part of such plant, whether growing or not, with a [THC] concentration that does not exceed 0.3% on a dry weight basis." 2015 Md. Laws, ch. 456.[5] The law also excluded industrial hemp from the definition of cannabis (then called "marijuana"). *Id.* In 2019, the General Assembly renamed "industrial hemp" to "hemp" and expanded the definition to include "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers" of the Cannabis sativa L. plant with a THC concentration that does not exceed 0.3% on a dry weight basis. 2019 Md. Laws, ch. 228. Cannabis is still defined to exclude hemp. CL § 5-101(r)(2)(vi). Federal law also excludes hemp from Schedule I controlled substances. 21 U.S.C. § 812, Schedule I (c)(17).

During the 2022 legislative session, the General Assembly passed two major bills concerning the legalization of recreational cannabis. The first, House Bill 1, proposed an amendment to the Maryland Constitution to legalize possession and use of cannabis under certain conditions. 2022 Md. Laws, ch. 45. The amendment, approved by voters in Maryland's November 2022 general election, provides that an individual who is at least 21 years old will be able to possess and use cannabis beginning on July 1, 2023, subject to regulation by the General Assembly.[6] *Id.*

The second bill, House Bill 837, addresses the limits of the impending legalization of cannabis and was largely contingent upon voters' approval of the constitutional amendment. 2022 Md.

---

[5] THC, the more common name for delta-9-tetrahydrocannabinol, is a mind-altering chemical found in the cannabis plant. National Inst. on Drug Abuse, *Cannabis (Marijuana)*, https://nida.nih.gov/research-topics/cannabis-marijuana (last visited Nov. 30, 2022).

[6] Under legislation contingent on voters' approval of the constitutional amendment, the use or possession of up to 1.5 ounces of cannabis will become a civil offense from January 1, 2023, through June 30, 2023, the day before the use or possession of that amount will become legal for individuals who are at least 21 years old. 2022 Md. Laws, ch. 26, § 3 (amending CL § 5-601), § 15. Effective July 1, 2023, the use or possession of up to 1.5 ounces of cannabis will be a civil offense only for those who are younger than 21 years old. 2022 Md. Laws, ch. 26, § 4 (amending CL § 5-601), § 16.

Laws, ch. 26. The legislation specifies that a person who is at least 21 or older will not be subject to any criminal or civil penalties for possessing up to 1.5 ounces (about 42.5 grams) of cannabis (the "personal use amount").[7] 2022 Md. Laws, ch. 26, § 4 (amending CL §§ 5-101, 5-601). The use or possession of the "civil use amount"—more than 1.5 ounces of cannabis but not more than 2.5 ounces (about 71 grams)[8]—will be a civil offense, punishable by a fine but not incarceration. *Id.* § 4 (amending CL §§ 5-101, 5-601). The use or possession of more than 2.5 ounces will be a crime. *Id.*

Several other existing cannabis-related offenses will remain subject to criminal or civil penalties under the legislation. For example, it will remain a crime to drive under the influence of cannabis,[9] to cultivate more than two cannabis plants,[10] and to

---

[7] The "personal use amount" is alternatively defined as an amount of concentrated cannabis that does not exceed 12 grams, an amount of cannabis products containing THC that does not exceed 750 milligrams, or two or fewer cannabis plants. 2022 Md. Laws, ch. 26, § 4 (amending CL § 5-101). Concentrated cannabis products are made by extracting substances from the plant into a form with a much higher THC concentration than the flower. L. Cinnamon Bidwell et al., *Exploring Cannabis Concentrates on the Legal Market: User Profiles, Product Strength, and Health-Related Outcomes*, 8 Addictive Behavs. Reps. 102, 102 (2018).

[8] The civil use amount is defined alternatively as an amount of concentrated cannabis that exceeds 12 grams but does not exceed 20 grams, or an amount of cannabis products containing THC that exceeds 750 milligrams but does not exceed 1,250 milligrams. 2022 Md. Laws, ch. 26, § 4 (amending CL § 5-101).

[9] Md. Code Ann., Transp. § 21-902(c) (providing that a person "may not drive or attempt to drive any vehicle while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person cannot drive a vehicle safely"), § 21-902(d) (providing that a person "may not drive or attempt to drive any vehicle while the person is impaired by any controlled dangerous substance . . . if the person is not entitled to use the controlled dangerous substance under the laws of this State"); *see also* 2022 Md. Laws, ch. 26, § 4 (amending CL § 5-601(d) to specify that legalization of the personal use amount of cannabis and decriminalization of the civil use amount "may not be construed to affect the laws relating to . . . operating a vehicle or vessel while under the influence of or while impaired by a controlled dangerous substance").

[10] 2022 Md. Laws, ch. 26, § 4 (adding new CL § 5-601.2). Only individuals 21 and older will be allowed to grow cannabis, and plants may not be cultivated in a location where the plants are subject to public

distribute cannabis or possess cannabis with the intent to distribute it.[11] The General Assembly has not yet enacted legislation establishing a legal marketplace for recreational cannabis, so—at least at first—the sale of cannabis will remain illegal even when the use and possession of cannabis is not. It will be a civil offense to smoke cannabis in public,[12] to smoke it on mass transit and in other indoor spaces regulated under the Clean Indoor Air Act,[13] and

---

view. *Id.* Violation of this law will be a misdemeanor subject to a three-year prison sentence and/or a fine of up to $5,000. *Id.* Licensed medical cannabis growers will not be limited to growing only two plants. *See* Maryland Medical Cannabis Commission, *Growers FAQ*, https://mmcc.maryland.gov/Pages/growers.aspx (last visited Nov. 30, 2022) (noting that regulations do not specify the maximum number of plants that a licensed grower may cultivate); *see also* Md. Code Ann., Health-Gen. § 13-3306(h) (providing that a licensed grower may not be penalized for cultivating plants for a medical cannabis processor or dispensary).

[11] The law currently prohibits the possession of "a controlled dangerous substance in sufficient quantity reasonably to indicate under all circumstances an intent to distribute or dispense [the] controlled dangerous substance." CL § 5-602(a)(2). Licensed medical cannabis dispensaries may not be penalized for distributing "medical cannabis, products containing medical cannabis, related supplies, or educational materials for use by a qualifying patient, a caregiver, or an academic research representative." Md. Code Ann., Health-Gen. § 13-3307(g). The law criminalizing possession with intent to distribute will change on January 1, 2023, to specify that possession of the civil use amount or the personal use amount of cannabis, "without other evidence of an intent to distribute or dispense," does not constitute possession with the intent to distribute cannabis. 2022 Md. Laws, ch. 26, § 5 (adding CL § 5-602(b)), § 18 (specifying that this change will take effect January 1, 2023). This will apparently codify a principle that Maryland courts have long recognized, i.e., that "no specific quantity of drugs has been delineated that distinguishes between a quantity from which one can infer [an intent for personal use as opposed to an intent to distribute] and a quantity from which one cannot make such an inference." *Collins v. State*, 89 Md. App. 273, 279 (1991). Beginning July 1, 2023, individuals who are at least 21 years old will be allowed to share with others who are at least 21 years old the personal use amount of cannabis, without any civil or criminal penalties. 2022 Md. Laws, ch. 26, § 4 (adding CL § 5-602(c)), § 16 (specifying that this change will take effect July 1, 2023).

[12] 2022 Md. Laws, ch. 26, § 4 (providing that, under CL § 5-601(c)(4), smoking cannabis in public will be a civil offense punishable by a fine of up to $250 for a first finding of guilt, and a fine of up to $500 for a second or subsequent finding of guilt).

[13] 2022 Md. Laws, ch. 26, § 5 (amending Md. Code Ann., Health-Gen. §§ 24-501 through 24-504 to clarify that a person may not smoke

to smoke cannabis in a passenger area of a motor vehicle on a highway.[14]

Regardless of the impending legalization of some possession and use of cannabis under Maryland law, the drug will remain a controlled substance that is illegal to possess or distribute under federal law. *See* 21 U.S.C. § 812 (listing marijuana as a Schedule I controlled substance), § 841 (imposing criminal penalties for the manufacture, distribution, and possession with intent to distribute a controlled substance), § 844(a) (imposing criminal penalties for simple possession of a controlled substance).[15]

## II
## Analysis

The question before us is what impact the impending legalization of certain amounts of cannabis under Maryland law will have on the authority of police officers to conduct searches of vehicles and individuals based on the odor of cannabis. Police searches are subject to the Fourth Amendment to the U.S. Constitution, which protects against unreasonable searches and seizures.[16] We thus begin our analysis by examining the Fourth

---

cannabis in an indoor space where tobacco smoking is already unlawful: an indoor area open to the public, an indoor place in which meetings are open to the public under the Open Meetings Act, mass transit, or an indoor place of employment).

[14] 2022 Md. Laws, ch. 26, § 6 (amending CL § 10-125 to prohibit an occupant of a motor vehicle from smoking cannabis in a passenger area of a motor vehicle on a highway and amending Md. Code Ann., Transp. ("TR") § 21-903 to prohibit a driver from smoking or consuming cannabis in a passenger area of a motor vehicle on a highway). Violation of CL § 10-125 will be a civil offense, subject to a fine not to exceed $25. CL § 10-126(g). Violating TR § 21-903 may result in the issuance of a traffic citation. TR § 26-201.

[15] On October 6, 2022, President Joe Biden pardoned all people convicted of cannabis possession under federal law and said that his administration would review whether cannabis should remain a Schedule I drug. White House, *Statement from President Biden on Marijuana Reform* (Oct. 6, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/10/06/statement-from-president-biden-on-marijuana-reform/.

[16] Maryland's constitution has an analogous provision, Article 26 of the Declaration of Rights. But because Article 26 has historically been read in pari materia with the Fourth Amendment, *see, e.g.*, *King v. State*,

Amendment principles that govern police searches generally. We then consider how Maryland's appellate courts have applied these principles in cases involving the odor of cannabis—first, under the State statutory scheme that, until 2014, criminalized the possession of any amount of cannabis, and second, under the current State statutory scheme, which has decriminalized the possession and use of less than 10 grams of cannabis and will remain in effect, with few changes,[17] until July 1, 2023.

## A. *Constitutional Principles that Apply to Police Searches Generally*

The Fourth Amendment, which protects against "unreasonable governmental intrusions," *Winston v. Lee*, 470 U.S. 753, 767 (1985), generally requires a police officer to obtain a warrant before conducting a search, *e.g.*, *Riley v. California*, 573 U.S. 373, 382 (2014). A judge shall issue a warrant only if the officer has demonstrated probable cause for the search, i.e., "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Nevertheless, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Two of those exceptions are relevant to our analysis: the

---

434 Md. 472, 482 (2013), we focus our analysis on the federal constitutional provision. The United States Supreme Court is, of course, "the final arbiter of the meaning and application of the [federal] Constitution," *R & T Constr. Co. v. Judge*, 323 Md. 514, 520 (1991), including the Fourth Amendment. But the Supreme Court has yet to consider a Fourth Amendment challenge to a search based on the odor of cannabis in a state that has decriminalized or legalized some use and possession of cannabis. Moreover, Maryland's courts would be the first to address a Fourth Amendment challenge in a State prosecution under the impending legalization scheme. We thus focus our attention on how Maryland's appellate courts have applied the Fourth Amendment in cases involving the odor of cannabis.

[17] As noted above, no possession or use of recreational cannabis will be legal until July 1, 2023, but the amount that a person may possess subject only to civil penalties (as opposed to criminal penalties) will increase from 10 grams to 1.5 ounces beginning January 1, 2023, and continuing through June 30, 2023. 2022 Md. Laws, ch. 26, § 3 (amending CL § 5-601). The law criminalizing possession with intent to distribute will also change on January 1, 2023, to specify that possession of the civil use amount or the personal use amount of cannabis, "without other evidence of an intent to distribute or dispense," does not constitute possession with the intent to distribute cannabis. *Id.* §§ 5, 18.

search incident to arrest exception, and the automobile exception (also known as the *Carroll* doctrine).

### 1. Search Incident to Arrest Exception

Under the search incident to arrest exception, police may lawfully search a person pursuant to a warrantless arrest if the police have probable cause to believe that the person "has committed a felony or is committing a felony or misdemeanor in the presence of the police." *Pacheco v. State*, 465 Md. 311, 321-22 (2019) (citing *Maryland v. Pringle*, 540 U.S. 366, 369-70 (2003)). Probable cause is "a fluid concept," *Gates*, 462 U.S. at 232, "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances," *Pringle*, 540 U.S. at 371. The standard takes into account "the factual and practical considerations of everyday life," *id.* at 370 (quoting *Gates*, 462 U.S. at 231), requiring less evidence "than would justify conviction but more evidence than that which would arouse a mere suspicion," *Doering v. State*, 313 Md. 384, 403 (1988). Thus, to justify an arrest, a police officer must be able to point to "specific and articulable facts," which, taken together, "would lead a reasonably cautious person to believe" that a crime had been or was being committed by the person arrested. *State v. Wallace*, 372 Md. 137, 148 (2002). But probable cause is "not a high bar," *State v. Johnson*, 458 Md. 519, 535 (2018) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)), requiring less than proof by the preponderance of the evidence, *Freeman v. State*, 249 Md. App. 269, 301-02 (2021).

The justifications for the search incident to arrest exception are to preserve evidence and to protect police officers by ensuring that the arrested person does not have weapons. *See, e.g.*, *Arizona v. Gant*, 556 U.S. 332, 338 (2009). Under this exception, police may search the arrestee's person and the area within the arrested person's immediate control. *Id.* at 339.

### 2. Automobile Exception

Another exception to the warrant requirement is the automobile exception, also known as the *Carroll* doctrine. The U.S. Supreme Court first articulated this exception in *Carroll v. United States*, 267 U.S. 132 (1925), a Prohibition-era case in which police had probable cause to believe that a car they observed driving on a road contained illegal liquor. Officers stopped and searched the vehicle, discovered and seized illegal liquor, and

arrested the occupants. *Id.* In upholding the warrantless search and seizure, the *Carroll* Court reasoned that "a 'necessary difference' exists between searching 'a store, dwelling house or other structure' and searching 'a ship, motor boat, wagon or automobile' because a 'vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'" *Collins v. Virginia*, 138 S. Ct. 1663, 1669 (2018) (quoting *Carroll*, 267 U.S. at 153). Thus, under the *Carroll* doctrine, police may conduct a warrantless search of "an automobile and the containers within it where they have probable cause to believe contraband or evidence [of a crime] is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991).[18] The justifications for this exception are the "ready mobility" and "pervasive and continuing governmental regulation" of vehicles, *Collins*, 138 S. Ct. at 1669-70, which has reduced individuals' expectation of privacy in automobiles, *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

The automobile exception "requires the same 'quantum of evidence'"—probable cause—as the search incident to arrest exception, but each exception "requires a showing of probabilities as to somewhat different facts and circumstances." *Pacheco*, 465 Md. at 324-25 (quoting 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.1(b), at 7 (5th ed. 2012)). Whereas the search incident to arrest exception requires probable cause to believe that the arrested person has committed a crime, *see supra* Part II.A.1, the *Carroll* doctrine only requires probable cause to believe that the vehicle contains contraband or evidence of a crime, *Florida v. Harris*, 568 U.S. 237, 243 (2013). When police have the requisite probable cause, they may search "every part of the vehicle and its contents that may conceal the object of the search." *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999) (emphasis omitted) (quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)). But "the scope of the automobile exception extends no further than the automobile itself," *Collins*, 138 S. Ct. at 1671, and probable cause to search a vehicle does not automatically provide probable cause to search an occupant of the vehicle, *State v. Wallace*, 372 Md. 137, 144 (2002).

---

[18] "Although typically described as the automobile exception to the Fourth Amendment warrant requirement, the *Carroll* exception also applies to searches of other vehicles." *Lewis v. State*, 470 Md. 1, 20 n.6 (2020); *see also Carroll*, 267 U.S. at 153 (characterizing "ship[s], motor boat[s], wagon[s], [and] automobile[s]" as "vehicle[s] [that] can be quickly moved"); *California v. Carney*, 471 U.S. 386, 393 n.2 (1985) ("With few exceptions, the courts have not hesitated to apply the vehicle exception to vehicles other than automobiles.").

    3.    *Techniques That a Police Officer May Use to Develop Probable Cause*

When an officer lacks probable cause to believe that a person has committed a crime or that a vehicle contains contraband or evidence of a crime, the officer may investigate further, employing techniques that fall short of an arrest or a search under the Fourth Amendment.

    i.    Terry *Stops*

If an officer reasonably suspects that a person is involved in criminal activity but lacks probable cause to make an arrest, the officer may nonetheless briefly detain the person, whether the person is on foot or in a vehicle, to investigate. *See, e.g.*, *Kansas v. Glover*, 140 S. Ct. 1183, 1187 (2020); *Navarette v. California*, 572 U.S. 393, 396-97 (2014). This brief investigatory detention, commonly known as a *Terry* stop,[19] is "considered less intrusive than a formal custodial arrest," *Wilson v. State*, 409 Md. 415, 440 (2009), and, thus, "requires a less demanding level of suspicion than probable cause," *Trott v. State*, 473 Md. 245, 255 (2021). That less demanding standard is known as "reasonable suspicion."

As with probable cause, reasonable suspicion "takes into account 'the totality of the circumstances—the whole picture.'" *Navarette*, 572 U.S. at 397 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). But while "a mere hunch does not create reasonable suspicion," the standard requires "considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than is necessary for probable cause." *Id.* The "reasonable suspicion" standard is less demanding in another way too. As the Supreme Court has explained:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

---

[19] It was in *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968), that the Supreme Court first recognized that an officer may briefly detain someone that the officer reasonably suspects of committing a crime.

*Alabama v. White*, 496 U.S. 325, 330 (1990). When an officer has reasonable suspicion, the officer may detain the person "only . . . as long as it takes [the] police officer to confirm or dispel [their] suspicions." *Swift v. State*, 393 Md. 139, 150 (2006); *see also Hiibel v. Sixth Jud. Dist. Ct. of Nevada*, 542 U.S. 177, 185 (2004) (noting that reasonable suspicion "permits the officer to stop the person for a brief time and take additional steps to investigate further").

### ii. Dog Sniffs

One way that police commonly confirm or dispel suspicions of criminal activity (especially during traffic stops) is by using a dog specially trained to detect the presence of contraband, including illegal drugs. *See, e.g.*, *Wilkes v. State*, 364 Md. 554, 565 (2001) (involving a police dog trained to alert to cocaine, heroin, cannabis, and hashish); *Emory v. State*, 101 Md. App. 585, 635 (1994) (involving a certified cannabis-sniffing dog). "A dog's sense of smell is somewhere between 100,000 and one million times stronger than a human's sense of smell." Melanie Reid, *Goodbye Marijuana Schedule I—Welcome to a Post-Legalization World*, 18 Ohio St. J. Crim. L. 169, 183 (2020). One might expect, therefore, that use of a police canine to detect drugs could rise to the level of a search under the Fourth Amendment, given that it is a special technique that effectively enhances an officer's senses beyond ordinary human capacity. *Cf. Kyllo v. United States*, 533 U.S. 27, 29-30, 34-35, 40 (2001) (holding that police officers conducted a search when, from their vehicle parked on a public street, they used a thermal-imaging device to detect infrared radiation emanating from a house).

But, in cases decided before the widespread legalization of cannabis in many states, the Supreme Court has said that a dog sniff is generally not "a 'search' within the meaning of the Fourth Amendment." *United States v. Place*, 462 U.S. 696, 707 (1983). The Court's rationale for that conclusion has been that a "search" generally occurs only when a government inspection "intrude[s] upon a legitimate expectation of privacy," *Illinois v. Andreas*, 463 U.S. 765, 771 (1983), and a trained dog's "sniff discloses only the presence or absence of . . . contraband," *Place*, 462 U.S. at 707, in which an individual has no legitimate privacy interest, *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Indeed, "dog sniffs are unique in their narrow yes/no determination of the presence of narcotic[s]." *Fitzgerald v. State*, 384 Md. 484, 501 (2004); *accord*

*Place*, 462 U.S. at 707 (recognizing that "the canine sniff is *sui generis*").[20]

In the pre-legalization context, therefore, the Supreme Court has held that a dog sniff of a vehicle during a traffic stop is ordinarily not a search subject to the Fourth Amendment, *Caballes*, 543 U.S. at 409-10, even though police officers' use of other sense-enhancing techniques may sometimes constitute a search, *see, e.g.*, *Kyllo*, 533 U.S. at 29-30. In distinguishing between dog sniffs and the use of some other techniques that have been found to be searches under the Fourth Amendment, a key consideration is whether the technique at issue might reveal the presence of noncontraband items. *See, e.g.*, *Caballes*, 543 U.S. at 409-10 (pointing out that "[c]ritical to th[e] [*Kyllo*] decision was the fact that the device was capable of detecting lawful activity—in that case, intimate details in a home"—whereas "[a] dog sniff conducted during a concededly lawful traffic stop . . . reveals no information other than the location of a substance that no individual has any right to possess"); *Fitzgerald v. State*, 153 Md. App. 601, 684-85 (2003) (contrasting the "limited and binary nature" of a dog sniff, which reveals only "the presence or absence of contraband drugs," with the use of heat-sensing technology in *Kyllo*, which "detected . . . unusual amounts of heat . . . generated inside the home, a phenomenon that is not itself criminal and could well have had a non-criminal explanation"), *aff'd*, 384 Md. 484 (2004). Because trained police dogs have historically been able to detect only the presence or absence of contraband, the Supreme Court has said that dog sniffs are generally not searches under the Fourth Amendment.[21]

---

[20] An officer's detection of the odor of cannabis using the officer's nose, unaided by the use of a specially trained dog, is clearly not a "search" under the Fourth Amendment, so long as the officer is "lawfully present" at the place where the officer smells the odor. 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.2(a) (6th ed. 2020). Under "what might be called the 'plain smell' rule," "no search in a Fourth Amendment sense has occurred," because no one has a reasonable expectation of privacy in "odors emanating from private premises, from a vehicle, or from some personal effects nearby" and detectable by "lawfully positioned agents 'with inquisitive nostrils.'" *Id.* (quoting *United States v. Johnston*, 497 F.2d 397, 398 (9th Cir. 1974)).

[21] An exception is when police use a canine to sniff the front door of a home, an act that violates "the traditional property-based understanding of the Fourth Amendment," which prohibits warrantless intrusions into a home or the area immediately adjacent without the permission of the homeowner. *Florida v. Jardines*, 569 U.S. 1, 6, 11 (2013). A dog sniff

### iii. Frisks

In addition to briefly detaining someone if the officer has reasonable suspicion that the person is engaged in criminal activity, an officer may conduct a frisk of the person for weapons if the officer has reasonable suspicion that the person stopped is armed and dangerous. *E.g.*, *Arizona v. Johnson*, 555 U.S. 323, 326-27 (2009). The officer must be able to articulate specific facts, particularized to the person stopped, that reasonably indicate that the person has a weapon and is presently dangerous. *E.g.*, *Ybarra v. Illinois*, 444 U.S. 85, 93-94 (1979). The purpose of the frisk is "not to discover evidence of crime, but to allow the officer to pursue [their] investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). Thus, an officer need not establish probable cause before frisking someone the officer reasonably suspects is armed and dangerous. Because the purpose of a *Terry* frisk is to detect the presence of a dangerous weapon, the scope is limited to patting down a detainee's outer clothing. *Lockard v. State*, 247 Md. App. 90, 105 (2020). This "pat-down" is sufficient to discover whether the person has a gun, knife, or other dangerous instrument. *Id*.

### 4. Summary

To summarize the constitutional principles that ordinarily apply in cases involving government searches and seizures, a police officer generally must obtain a warrant before conducting a search. But an officer need not obtain a warrant before searching a person if the officer has a lawful reason to arrest that person. Likewise, an officer need not obtain a warrant before searching a vehicle if the officer has probable cause that the vehicle contains contraband or evidence of a crime. If an officer lacks probable cause to arrest someone or search a vehicle, the officer may

---

during a traffic stop on a public roadway does not implicate this property-based theory and does not violate the Fourth Amendment so long as the officer has a lawful reason to conduct the traffic stop and the officer does not prolong the stop simply to allow a canine to arrive and sniff the vehicle. Once the purpose of "an ordinary traffic stop" "has been fulfilled, the continued detention of the car and the occupants amounts to a second detention." *Ferris v. State*, 355 Md. 356, 372 (1999). "Thus, once the underlying basis for the initial traffic stop has concluded, a police-driver encounter which implicates the Fourth Amendment is constitutionally permissible only if either (1) the driver consents to the continuing intrusion or (2) the officer has, at a minimum, a reasonable, articulable suspicion that criminal activity is afoot" and the canine sniff would confirm or dispel that suspicion. *Id.*

nonetheless briefly detain a person or vehicle, provided the officer has reasonable suspicion that criminal activity is afoot. During such a stop, the officer may use a police-trained dog to sniff for contraband. The officer may also frisk a person if the officer reasonably suspects that the person is armed and dangerous.

We turn now to how courts have applied these Fourth Amendment principles in cases involving the odor of cannabis.

## B. Police Officers' Authority, Before the Decriminalization of Small Amounts of Cannabis, to Conduct Searches Based on the Odor of Cannabis

Before 2014, when the possession or use of any amount of cannabis was a crime under Maryland law, the odor of cannabis provided police a lawful basis to search both individuals and vehicles. *See, e.g.*, *McGurk v. State*, 201 Md. App. 23, 52 (2011) (addressing the search of a person incident to arrest); *Wilson v. State*, 174 Md. App. 434, 454-55 (2007) (addressing the search of a vehicle). This was true whether it was an officer who detected the odor of cannabis, *see, e.g.*, *State v. Harding*, 166 Md. App. 230, 236 (2005), or a police dog trained to alert to the presence of illegal drugs, *see, e.g.*, *Gadson v. State*, 341 Md. 1, 8 (1995).

As to individuals, the odor of cannabis provided probable cause to believe that cannabis was present; thus, if an officer could "localize its source to a person, the officer ha[d] probable cause to believe that the person ha[d] committed or [was] committing the crime of possession of [cannabis]." *McGurk*, 201 Md. App. at 52 (emphasis omitted) (quoting *United States v. Humphries*, 372 F.3d 653, 659 (4th Cir. 2004)). The probable cause, in turn, authorized the officer to arrest that person and search them incident to arrest. *See In re D.D.*, 479 Md. 206, 224 (2022) (recognizing that "the odor of [cannabis] particularized to a person provided probable cause for an arrest" before 2014); *Pacheco*, 465 Md. at 323 (explaining the search incident to arrest exception).

As to vehicles, the odor of cannabis emanating from an automobile provided police probable cause to believe that cannabis was present somewhere in that automobile. *Wilson*, 174 Md. App. at 454. Thus, the odor authorized an officer to search the entire vehicle. *Id.* at 455 & n.7; *see also United States v. Ross*, 456 U.S. 798, 824-25 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the

vehicle and its contents that may conceal the object of the search.").[22]

Probable cause to search a vehicle, however, did not necessarily establish probable cause to search each of the vehicle's occupants. Rather, the Court of Appeals said that, "while [an] alert [to a car] by a drug dog trained to detect contraband[] undisputedly[] gave the police probable cause to believe there was contraband somewhere in the car or on the person of someone in the car, the canine sniff of the vehicle alone did not amount to probable cause to then search each of the passengers." *State v. Wallace*, 372 Md. 137, 155-56 (2002). *Wallace* involved a traffic stop, during which a police dog alerted to the presence of illegal drugs in the car. *Id.* at 141. Police removed the three occupants from the vehicle and searched them. *Id.* at 142. The *Wallace* Court held that the search of the backseat passenger was illegal because "there was no probable cause for the officer, at that point in time on the night in question," to believe that this particular passenger had illegal drugs. *Id.* at 157. The Court elaborated:

> Without additional facts that would tend to establish [the backseat passenger's] knowledge and dominion or control over the contraband before his search, the K-9 sniff of the car was insufficient to establish probable cause for a search of a non-owner, non-driver for possession. Merely sitting in the backseat of a car did not amount, in this case, to probable cause specific to [the backseat

---

[22] *Wilson* involved the odor of burnt cannabis. 174 Md. App. at 438. According to some out-of-state courts, the odor of burnt cannabis indicates drug use but not drug trafficking, justifying a search of only a vehicle's passenger compartment but not the trunk; in these courts' view, only the odor of raw (i.e., unburnt) cannabis indicates drug trafficking, justifying a search of a vehicle's trunk. *Id.* at 446-54 (collecting cases). The *Wilson* Court rejected this "burnt-raw" distinction, concluding that it would not be "unreasonable for an officer to believe that the odor of burnt [cannabis] indicate[d] current possession of unsmoked [cannabis] somewhere inside of the vehicle, including the trunk." *Id.* at 454-55; *see also id.* at 456 ("eliminat[ing] the need to distinguish between burnt, burning, or raw [cannabis]" when determining whether probable cause exists to search a vehicle). Consistent with the *Wilson* Court's conclusion, the Court of Appeals has said that "[t]he automobile doctrine permits the search of 'every part of the vehicle and its contents that may conceal the object of the search.'" *Pacheco*, 465 Md. at 322 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999)).

> passenger] to search and subsequently arrest him.

*Id.* at 156.[23] The Court suggested, however, that the outcome might have been different if the defendant had been the driver or owner of the vehicle, *id.* at 156-57, and, four years later, the Court of Special Appeals stated that a canine's alert to illegal drugs in a vehicle with a driver and one other occupant provided "probable cause to arrest, at the very least, the driver," who was "a person with a more significant connection to the car" than a mere passenger. *State v. Ofori*, 170 Md. App. 211, 229, 233 (2006).

In sum, when the possession or use of any amount of cannabis was criminal under Maryland law, police could lawfully conduct a search incident to arrest of an individual who smelled of cannabis. If the smell of cannabis came from a vehicle, police could search the entire vehicle and its contents. But the smell of cannabis coming from a vehicle did not authorize police to search an occupant of the vehicle unless additional facts connected that particular occupant to the cannabis.

### C. *Police Officers' Authority, Under the Current Statutory Scheme, to Conduct Searches Based on the Odor of Cannabis*

Under Maryland's current statutory scheme—which has removed the criminal penalties for possession of less than 10 grams of cannabis but has not legalized it—the odor of cannabis, standing alone, still provides a police officer justification to search a vehicle, but it no longer authorizes the search of an individual (though an officer may briefly detain a person who smells of cannabis to investigate further). *See Robinson v. State*, 451 Md. 94, 99 (2017) (holding that the odor of cannabis emanating from a vehicle provides a police officer justification to search that vehicle); *Lewis v. State*, 470 Md. 1, 10 (2020) (holding that the odor of cannabis emanating from a person alone does not provide probable cause for a police officer to arrest and search that person); *In re D.D.*, 479 Md. 206, 215, 217 (2022) (holding that the odor of cannabis on a

---

[23] The *Wallace* Court suggested that police could have established the requisite link had "the K-9 . . . sniffed [the passenger], and specifically alerted to [him], before the officer searched him," or "[i]f the officers simply had [the dog] sniff each of the passengers of the car prior to searching them," in which case "probable cause might have existed to search any of the passengers who positively re-alerted the canine to contraband." *Id.* at 156.

person authorizes a police officer to conduct a brief investigatory detention).

### 1. *Searches of Vehicles*

In *Robinson v. State*, the Court of Appeals for the first time considered the impact of decriminalization on a police officer's authority to conduct a search based on the odor of cannabis. That decision involved three different defendants, each of whom had been arrested following a search of an automobile based on an officer's detection of a strong odor of "fresh" (i.e., unburnt) cannabis coming from the vehicle. *Robinson*, 451 Md. at 99-106. Challenging these searches, the defendants argued that the odor of cannabis no longer provided probable cause to search a vehicle, because an officer could not tell, from odor alone, whether the car contained a criminal amount of cannabis or a non-criminal amount of less than 10 grams. *Id.* at 106-07.

The Court in *Robinson* rejected the defendants' argument, holding that a police officer still has probable cause to search a vehicle when the officer detects an odor of cannabis emanating from the vehicle. *Id.* at 99. Although the Court acknowledged that "it is effectively impossible for law enforcement officers to identify a quantity of [cannabis] based on odor alone," *id.* at 130, the Court noted that possession of less than 10 grams of cannabis, while no longer criminal, is still illegal, and, thus, "any amount" of cannabis "remains contraband," *id.* at 99.[24] The odor of cannabis, then, "gives rise to probable cause to believe that the vehicle contains contraband," *id.*, and the automobile exception authorizes a police officer to search a vehicle based on probable cause that it contains contraband, *id.* at 109.

The Court went even further, however, holding that, "separate from the odor of [cannabis] providing probable cause to believe that a vehicle contains *contraband*, the odor of [cannabis] provides probable cause to believe that a vehicle contains *evidence of a crime*." *Id.* at 133 (emphasis added). Although this part of the analysis was limited to just one paragraph in a long opinion, the

---

[24] Although none of the defendants claimed that they possessed or used cannabis for medical reasons, *Robinson*, 451 Md. at 97 n.2, the Court acknowledged that qualifying patients and their caregivers who comply with the State's medical cannabis laws may not be subject to arrest, prosecution, or any civil or administrative penalty for the possession of cannabis, *id.* at 136 (discussing Md. Code Ann., Health-Gen. § 13-3313(a)). Nonetheless, the Court repeatedly said that cannabis "in any amount" remains contraband. *Id.* at 99, 125, 126, 129, 130, 137.

Court reasoned that "[t]he odor of [cannabis] emanating from a vehicle may be just as indicative of crimes such as the possession of more than ten grams of [cannabis], possession of [cannabis] with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance, as it is of possession of less than ten grams of [cannabis]." *Id.* at 133-34. Thus, the Court concluded, an officer who detects the odor of cannabis emanating from a vehicle has probable cause to search that vehicle based on the reasonable belief that the vehicle contains evidence of a crime such as possession of 10 grams or more of cannabis, distribution of cannabis, or driving under the influence of a controlled dangerous substance. *Id.*

### 2. *Searches of a Vehicle's Occupants*

In a series of cases after *Robinson*, the Court of Appeals clarified that justification to search a vehicle does not necessarily establish justification to search or pat down individuals inside that vehicle. In one case, decided just two months after *Robinson*, the Court of Appeals held that, while the odor of cannabis emanating from a vehicle authorizes an officer to search that vehicle, the officer needs more than the odor of cannabis to justify frisking the occupants of that vehicle. *Norman v State*, 452 Md. 373, 379 (2017). As we noted above, *see supra* Part II.A.3.iii, a frisk must be supported by reasonable suspicion that the person is armed and dangerous. In *Norman*, an officer stopped a car with a broken taillight and "detected a strong odor of fresh [cannabis] emanating from the vehicle's passenger compartment." 452 Md. at 379-80. The officer told the vehicle's three occupants to get out of the car so that he could search it for cannabis; the officer then frisked the occupants to look for weapons and found, in one passenger's front pocket, a bag of cannabis. *Id.* at 380. In challenging the frisk, the passenger argued that the officer lacked reasonable suspicion, based solely on the odor of cannabis, that any of the vehicle's occupants were armed and dangerous. *Id.* at 384-85.

The Court held that the "odor of [cannabis] . . . emanating from a vehicle with multiple occupants does not," standing alone, "give rise to reasonable articulable suspicion that the vehicle's occupants are armed and dangerous and subject to frisk." *Id.* at 412. Instead, to justify frisking an occupant of the vehicle, an officer must have "an additional circumstance or circumstances" indicating that the occupant is armed and dangerous. *Id.* at 411. In reaching this conclusion, the Court emphasized its prior holding in *Wallace* that the odor of drugs emanating from a vehicle, without more, does not provide probable cause to search the occupants of a

vehicle. *Id.* at 399. While acknowledging that "[a] frisk is different from a search of a person," *id.* at 388, the Court reasoned that both types of seizures "involve applications of a defendant's Fourth Amendment right[] 'to be secure in their person[ ], . . . against unreasonable searches,'" a right that "can be violated by either an unreasonable search or an unreasonable frisk." *Id.* at 413 (quoting U.S. Const. amend. IV). Whether an officer searches a person or frisks them, the reasonableness of that action depends "on the circumstances—or the lack of circumstances—that involve the [person]" searched or frisked. *Id.* In short, "a law enforcement officer cannot reasonably infer that a particular occupant of a vehicle is armed and dangerous just because an odor of [cannabis] indicates that [cannabis] may be somewhere in the vehicle." *Id.* at 425; *see also In re D.D.*, 479 Md. at 228 ("[W]hile the smell of [cannabis] can justify a quick pat-down of a vehicle's occupants if combined with some other pertinent circumstance(s), the odor, in and of itself, is insufficient to give rise to reasonable suspicion that a specific individual within the vehicle is armed and dangerous.").

In *Pacheco*, the Court of Appeals revisited the issue of whether officers may arrest and search a vehicle's occupants based on the odor of cannabis. 465 Md. at 330. The Court there reiterated that "the same facts and circumstances that justify a search of an automobile do not necessarily justify an arrest and search incident thereto." *Id.* at 333. In *Pacheco*, two officers approached a vehicle with its windows down, smelled burnt cannabis, and spotted a joint in the center console. *Id.* at 318. One of the officers knew immediately that the joint contained less than 10 grams of cannabis. *Id.* Nonetheless, the officers ordered the driver, who was the sole occupant, out of the vehicle and searched him, finding cocaine in one of his front pockets. *Id.* The officers then searched the vehicle and found a cannabis stem and two packets of rolling papers. *Id.* The officers took the driver to a police station, where they issued him a citation for possessing less than 10 grams of cannabis and charged him with possession of cocaine with intent to distribute. *Id.*

In court, the driver did not challenge the search of the vehicle but argued that police had no authority to search his person. *Id.* at 318, 330. The Court of Appeals agreed, concluding that the officers lacked probable cause to arrest (and, thus, search) the driver based only on "their detection of 'fresh burnt' [cannabis] emanating from the vehicle and the joint they observed in the center console." *Id.* at 332. Although courts will consider "the experience and special knowledge of police officers," *id.* (quoting *Longshore v. State*, 399 Md. 486, 534 (2007)), the police in *Pacheco* did not

point to any evidence indicating that, "in their experience and training[,] the possession of one joint . . . supported an inference that [the driver] also possessed roughly nine and a half more grams of [cannabis] on his person," *id.* at 332-33. And "[n]othing in the record suggest[ed] . . . that [the driver] intended to distribute [cannabis] or was operating the vehicle while under the influence of [cannabis]." *Id.* at 332 n.7.[25]

### 3. *Searches of Individuals Outside the Vehicle Context*

In 2020, the Court of Appeals for the first time considered the impact of decriminalization on an officer's authority to search a person, outside the vehicle context, based on the odor of cannabis. *Lewis v. State*, 470 Md. 1 (2020). The Court in that case held that "the odor of [cannabis], without more" no longer "provide[s] law enforcement officers with the requisite probable cause to arrest and perform a warrantless search of that person incident to arrest." *Id.* at 10. The Court reasoned that "police officers must have probable cause to believe a person possesses a *criminal amount* of [cannabis] in order to arrest that person and conduct a search incident thereto." *Id.* at 23. But, the Court explained, "[t]he odor of [cannabis] alone is not indicative of the quantity (if any) of [cannabis] in someone's possession," and, thus, does not indicate that a person has committed a felony or a misdemeanor (as opposed to a civil infraction or no infraction at all). *Id.*

Importantly, the Court in *Lewis* did not back away from its reasoning in *Robinson* that "the odor of [cannabis] emanating from a vehicle provides probable cause to believe that the *vehicle* contains evidence of a crime." *Lewis*, 470 Md. at 25 (quoting *Robinson*, 451 Md. at 134) (emphasis added). But the Court clarified that *Robinson* was limited to the vehicle context. In explaining why the odor of cannabis provides probable cause to search a vehicle but not to arrest a person, the Court in *Lewis* contrasted the "diminished expectation of privacy one enjoys in [their] vehicle" with the "heightened expectation of privacy

---

[25] In a concurring opinion, Judge McDonald (joined by Judge Watts), said that the majority opinion "should not be read to preclude a conclusion that an officer has probable cause for arrest when the officer comes upon an individual alone and awake in the driver's seat of a vehicle with a [cannabis] joint at hand and the pungent odor of [cannabis] in the air." *Pacheco*, 465 Md. at 337 (McDonald, J., concurring). But to justify an arrest and search of that driver, an officer must be able to point to other specific facts indicating that the driver has committed the crime of driving while impaired by cannabis. *Id.*

enjoyed in one's person." *Lewis*, 470 Md. at 26. In particular, the Court explained:

> Arresting and searching a person, without a warrant and based exclusively on the odor of [cannabis] on that person's body or breath, is unreasonable and does violence to the fundamental privacy expectation in one's body; the same concerns do not attend the search of a vehicle.

*Id.* Thus, "more than the odor of [cannabis] is required for probable cause to arrest a person and conduct a search incident thereto." *Id.* at 17.

The odor of cannabis does, however, permit a police officer to briefly detain a person and investigate further. In a case decided earlier this year, the Court of Appeals concluded that, "[e]ven following partial decriminalization, the odor of [cannabis] on a person provides reasonable suspicion to conduct a brief investigatory detention to attempt to determine whether the person has committed a criminal offense." *In re D.D.*, 479 Md. at 249. That case involved the stop and frisk of D.D., a fifteen-year-old boy, whom police encountered in an apartment building when responding to a complaint about the odor of cannabis. *Id.* at 216. The officers encountered D.D. and four friends, all smelling of cannabis, and ordered them to sit down. *Id.*[26]

In upholding this stop, the Court of Appeals emphasized that a stop requires only reasonable suspicion that criminal activity is afoot, a standard "less stringent" than the probable cause required to make an arrest. *Id.* at 230. Thus, "a particular circumstance or set of circumstances" may "fall short of probable cause" but "satisfy the reasonable suspicion standard." *Id.* at 231. The Court concluded that this is "precisely the case with respect to the odor of [cannabis]." *Id.* According to the Court, "partial de-criminalization has reduced the level of certainty associated with the odor of [cannabis] on a person from probable cause that the person has committed a crime to reasonable suspicion that the person has committed a crime or is in the process of committing a

---

[26] The Court recounted other facts surrounding the encounter as well, such as the fact that no one in the group would tell the officers where they lived, that all were wearing "baggy clothes," and that the officers found D.D. in particular "to be evasive." *Id.* at 216, 218. But the majority treated the case as one where the stop was justified by the smell of cannabis alone. *Id.* at 241 n.10.

crime." *Id.* at 232. "Put another way, . . . the officers [here] could not have arrested D.D. or any of the members of the group based solely on the odor of [cannabis], but that does not mean the officers' suspicion that one or more of the group might possess at least 10 grams of the drug—based on odor alone—was unreasonable." *Id.* at 235-36.

The Court rejected D.D.'s argument that, "[b]ecause the odor of [cannabis] alone is not indicative of criminal activity and an officer must have evidence of a crime in order to conduct an investigatory stop, it necessarily follows that the odor of [cannabis] alone does not provide reasonable suspicion to conduct a *Terry* stop." *Id.* at 224. In doing so, the Court emphasized that neither probable cause nor reasonable suspicion requires police "to rule out a suspect's innocent explanation for suspicious facts." *Id.* at 231 (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018)). And the Court further reasoned that, even though "there are many wholly innocent reasons why someone might smell of [cannabis]," "decriminalization has not rendered the odor of [cannabis] free of all criminal suspicion . . . because the use or possession of 10 grams or more of [cannabis] remains a criminal offense in Maryland." *Id.* at 231-32, 235; *see also Robinson*, 451 Md. at 133-34. In the Court's view, "[t]here can be no real dispute that the odor of [cannabis] still provides evidence of a crime . . . even if it may not rise to the level of probable cause in every situation." *In re D.D.*, 479 Md. at 235.

That the odor of cannabis would justify a stop but not authorize an arrest also "makes sense," the Court observed, "given the differing levels of intrusiveness of the two Fourth Amendment events" and the balance of interests involved. *Id.* at 232. While "[a]n arrest is the 'most intrusive encounter' that a police officer has with a citizen," *id.* at 232-33 (quoting *Swift v. State*, 393 Md. 139, 150 (2006)), an investigatory detention is "limited in duration and purpose and can only last as long as it takes a police officer to confirm or to dispel his suspicions," *id.* at 233 (quoting *Swift*, 393 Md. at 150). "Being stopped for a short amount of time so that an officer can ask a few questions does not do the same 'violence to the fundamental privacy expectation in one's body' that being placed in handcuffs and physically searched does." *Id.* at 236. Ultimately, in the Court's view, "[t]he public interest in investigating and prosecuting criminal offenses, balanced against an individual's freedom of movement and reasonable expectation of privacy in their person," justifies "a brief investigatory detention" based on the odor of cannabis, but not an arrest. *Id.* at 233. "Indeed," the Court observed, "it would be peculiar if the odor

of [cannabis] was sufficient to meet the higher standard of probable cause needed to search a vehicle, but insufficient to meet the lower standard of reasonable suspicion needed to briefly stop a person on the street." *Id.* at 236.

The Court further opined "that accepting D.D.'s argument could significantly hamper the legitimate investigation of criminal activity in Maryland." *Id.* at 238. The Court noted that "[a]n officer who lacks probable cause to arrest is not required 'to simply shrug his shoulders and allow a crime to occur or a criminal to escape.'" *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 145 (1972)). But if reasonable suspicion required an officer to rule out all innocent explanations of suspicious facts, an officer would not be able to question someone with the butt of a handgun protruding from their waistband (because some residents may lawfully carry a firearm), or detain the driver of a car with potentially excessive window tinting (because "inspection of a tinted window cannot definitively tell whether the tint exceeds the legal limit"). *Id.* at 236-37. As to the odor of cannabis, the Court acknowledged that:

> [w]hen a police officer smells [cannabis] on someone, it is certainly the case that the person may possess less than 10 grams of [cannabis] or they may possess no [cannabis] at all. But it also is possible that the person is presently in possession of 10 or more grams of [cannabis]. Under D.D.'s reasoning, police officers would be powerless to conduct a brief investigatory detention to try to determine which category the person is in. That is not what the Fourth Amendment requires. To the contrary, the odor of [cannabis] permits an officer to briefly detain an individual to investigate whether that person has committed a criminal offense.

*Id.* at 238.[27]

---

[27] The Court further concluded that, based on the totality of the circumstances, police had reasonable suspicion to frisk D.D. for a weapon. *In re D.D.*, 479 Md. at 243-44. Although the odor of cannabis was one factor, the police also pointed to "the group's 'evasive body language,' and the fact that there were 'five of them in baggy clothes' in a place 'where they could run out the door.'" *Id.* "These circumstances," the Court concluded, "viewed collectively, would lead a reasonably prudent law enforcement officer to suspect that D.D. was armed and dangerous." *Id.*

Under the current decriminalization scheme, then, the odor of cannabis emanating from a vehicle authorizes a police officer to search that vehicle, whether it is the officer or a specially trained dog who has detected the odor. The smell of cannabis in a vehicle standing alone does not, however, authorize a search of the vehicle's occupants. And the smell of cannabis emanating from a person, by itself, is no longer probable cause sufficient to justify an arrest and search incident to arrest.[28] But the odor of cannabis coming from a person does provide sufficient reasonable articulable suspicion to permit the officer to briefly detain that person to investigate further, even without any other indication of criminal activity.

**D. Police Officers' Likely Authority to Conduct Searches Based on the Odor of Cannabis Once Some Use and Possession of Cannabis Becomes Legal**

Finally, we come to the question that the General Assembly has asked us to answer: whether the legalization of the possession of up to 1.5 ounces of cannabis will affect the authority of police officers under the Fourth Amendment to conduct searches based on the odor of cannabis.

Before offering our opinion, we pause for a moment to address the role, if any, of the federal regulation of cannabis. More specifically, does the fact that possession of any cannabis remains a crime under *federal* law provide probable cause for a *state's* officers to search vehicles or individuals, regardless of the status of cannabis under that state's law? *See, e.g.*, Kevin Cole, *Probable Cause to Believe What? Partial Marijuana Legalization and the Role of State Law in Federal Constitutional Doctrine*, 54 Crim. L. Bull., Spring 2018, art. 1. There appears to be some uncertainty about whether federal law offers a basis for state law enforcement officers to conduct a search based on the odor of cannabis in a state that has legalized or decriminalized its possession. *See* Orin S. Kerr, *Cross-Enforcement of the Fourth Amendment*, 132 Harv. L. Rev. 471, 475 (2018); *compare Commonwealth v. Craan*, 13 N.E.3d 569, 579 (Mass. 2014) (holding that, when state law "expressly has decriminalized certain conduct, there is no extant joint investigation, and the Federal government has indicated that it will not prosecute certain conduct, the fact that such conduct is technically subject to a Federal prohibition does not provide an

---

[28] That does not mean, however, that the odor of cannabis could not be one of several factors that establishes probable cause, which, of course, depends on the totality of the circumstances. *See, e.g.*, *Pringle*, 540 U.S. at 371.

independent justification for a warrantless search"), *with United States v. Sanders*, 248 F. Supp. 3d 339, 347 (D.R.I. 2017) (finding that the odor of cannabis contributed to an officer's reasonable suspicion because, "regardless of what the R.I. General Assembly has declared" by decriminalizing the possession of less than one ounce of the drug, "possession of [cannabis] is still unlawful under federal law").

The Maryland Court of Appeals has not addressed this precise question. More than twenty-five years ago, in a case involving handgun permitting laws, the Court of Appeals said that "state and local law enforcement officials may appropriately enforce federal law." *Department of Pub. Safety v. Berg*, 342 Md. 126, 139 (1996). The Court thus concluded that State Police could deny a handgun permit to an applicant whose criminal history made him ineligible, under federal law, to purchase a gun. *Id.* at 131-32, 139. But, as far as we can tell, the Court has never decided whether it is appropriate for a State police officer to rely on federal law to establish probable cause for an arrest or a search.

That said, we think the Court of Appeals might have *implicitly* decided the issue as applied to searches based on the odor of cannabis.[29] In *Robinson*, in which the Court held that the odor of cannabis coming from a vehicle authorizes an officer to search that vehicle, the Court noted that "[p]ossession of [cannabis] in any amount . . . remains a crime under federal law." 451 Md. at 97 n.1 (citing 21 U.S.C. § 844(a)). But the Court did not expressly rely on this fact to support its holding, nor did the Court mention the federal law in subsequent cases considering the effect of Maryland's decriminalization scheme. In fact, the Court later held in *Lewis* that the Fourth Amendment did not permit officers to arrest an individual (or conduct a search incident to arrest) based solely on the odor of cannabis. While the Court did not expressly consider in *Lewis* whether federal law might provide grounds for the arrest, we assume that the Court did not forget that possession of cannabis remains illegal under federal law. We thus infer that, by holding in *Lewis* that the odor of cannabis on a person no longer authorizes an arrest and search of that person, the Court implicitly decided that a police officer in Maryland generally may *not* rely on the fact that cannabis is illegal under federal law to justify an arrest or search based solely on the odor of cannabis.[30] Although we

---

[29] We express no view on the topic in other contexts.

[30] To be clear, there may be some circumstances under which Maryland police officers are participating in joint investigations with

cannot say with certainty how the courts would decide the question if squarely presented, we assume for now that a Maryland officer would not be able to rely on federal cannabis law to justify a search (of either vehicles or persons) based on the odor of cannabis.

With that caveat, we begin our analysis of the General Assembly's questions by making clear that, once the use and possession of cannabis under certain circumstances becomes legal, the odor of cannabis will—at the very least—still be a factor that officers may use to establish probable cause to conduct a search. After all, "[t]he probable-cause standard . . . depends on the totality of the circumstances," *Lewis*, 470 Md. at 21 (quoting *Pringle*, 540 U.S. at 370-71), and "[a] factor that, by itself, may be entirely neutral and innocent, can, when viewed in combination with other circumstances, raise a legitimate suspicion in the mind of an experienced officer," *Ransome v. State*, 373 Md. 99, 105 (2003). Thus, regardless of whether the odor of cannabis *standing alone* will be enough to establish probable cause for a search, we believe that the odor will, at the very least, still be a relevant factor in the "flexible, all-things-considered approach" to assessing probable cause. *Florida v. Harris*, 568 U.S. 237, 244 (2013); *cf. Bailey v. State*, 412 Md. 349, 382 (2010) ("The odor of ether is an innocent factor without context, but the totality of the circumstances may lead to a conclusion that the lawful substance is associated with a criminal purpose.").

Indeed, courts in other states that have legalized some use and possession of cannabis have held that the odor of cannabis is at least a relevant factor in determining whether a police officer's search is justified. *See Commonwealth v. Barr*, 266 A.3d 25, 44 (Pa. 2021) (holding, in light of a state law legalizing possession and use of cannabis for medical purposes, that "the odor of [cannabis] alone does not amount to probable cause to conduct a warrantless search of a vehicle but . . . may be considered as a factor in examining the totality of the circumstances"); *People v. Hill*, 162 N.E.3d 260, 265 n.2 (Ill. 2020) (recognizing, in a state that had legalized medical cannabis use, "the smell and presence of cannabis undoubtedly remains a factor in a probable cause determination"); *People v. Zuniga*, 372 P.3d 1052, 1054 (Colo. 2016) (holding, since passage of a state constitutional amendment legalizing some use and possession of cannabis, that "the odor of

---

federal officers, *see, e.g.*, Md. Code Ann., Pub. Safety ("PS") § 2-412(c)(12), or are deputized to act on behalf of the federal government, *see, e.g.*, 21 U.S.C. § 878; PS § 2-412(d). We do not consider here how those situations might affect a Maryland officer's authority to rely on federal law in conducting a search based on the odor of cannabis.

[cannabis] is relevant to the totality of the circumstances test and can contribute to a probable cause determination").

The more difficult questions are whether, when some use and possession of cannabis becomes legal in Maryland, the odor of cannabis *standing alone* will be enough to justify a police officer's search of a vehicle or a police officer's investigatory stop of an individual. *Cf. Zuniga*, 372 P.3d at 1060 n.6 (declining to decide, after Colorado legalized possession of recreational cannabis, whether the odor of cannabis *alone* would support probable cause to search a vehicle). Obviously, even though the Maryland courts have held that the odor of cannabis alone could support vehicle searches and investigatory stops under the State's decriminalization regime, the fact that some amount of cannabis will, beginning July 1, 2023, be fully *legal* to possess under State law raises new questions about whether the odor of cannabis, by itself, justifies those actions.

Before offering our opinion as to what Maryland's appellate courts would decide, we emphasize that we are not writing on a blank slate. The Court of Appeals has already analyzed how the State's shift to decriminalization has affected the authority of officers to conduct searches and to make arrests based on the odor of cannabis standing alone. Our task here is to predict as best as we can, based on that body of precedent, how the Court of Appeals would rule, regardless of how we might have approached the question on a blank slate. With that understanding of our role, we turn to the General Assembly's questions.

### 1. *Searches of Vehicles and Their Occupants*

We first consider whether, when possession of up to 1.5 ounces of cannabis becomes legal, officers will still have probable cause under the automobile exception to search a vehicle based on the odor of cannabis standing alone.[31]

In our view, although not entirely clear, the Court's reasoning in *Robinson* suggests that the Court would conclude that the odor of cannabis coming from a vehicle, standing alone, still justifies a warrantless search of the vehicle under the impending partial legalization scheme, on the ground that it will still provide an

---

[31] The Court of Appeals acknowledged in *In re D.D.* that voters would decide during the November 2022 election whether to approve the legalization of some use and possession of cannabis, but the Court declined to offer any opinion as to legalization's potential impact on the Court's Fourth Amendment jurisprudence. 479 Md. at 232 n.6.

officer with probable cause to believe that the vehicle contains evidence of a crime. *Robinson*, 451 Md. at 133-34. We recognize that the Court's opinion in *Robinson* was "based largely on the idea" that, under the State's decriminalization regime, possession of cannabis in any amount remains illegal (and, thus, contraband), *In re D.D.*, 479 Md. at 226—a rationale that will no longer apply after the partial legalization of cannabis. The Court also repeatedly emphasized in its opinion that "decriminalization is not . . . legalization." *Robinson*, 451 Md. at 99, 125.

But, although the Court in *Robinson* focused on the fact that cannabis in any amount remains contraband under the State's decriminalization regime, the Court also relied on a second, "separate" rationale: that the odor of cannabis emanating from a vehicle "provides probable cause to believe that [the] vehicle contains evidence of a crime." *Id.* at 133. While acknowledging that the odor may be indicative of the non-criminal activity of "possession of less than ten grams of [cannabis]," the Court concluded that the odor was "*just as indicative of* crimes such as the possession of more than ten grams of [cannabis], possession of [cannabis] with the intent to distribute, or the operation of a vehicle under the influence of a controlled dangerous substance." *Id.* at 133-34 (emphasis added). Although this "separate" rationale was discussed in only one paragraph of the Court's decision in *Robinson*, the Court has repeatedly reaffirmed that view in its later decisions. *See Pacheco*, 465 Md. at 328-29 (quoting *Robinson*, 451 Md. at 134); *Lewis*, 470 Md. at 25 (same); *In re D.D.*, 479 Md. at 226-27 (quoting *Robinson*, 451 Md. at 133-34).

That separate rationale is important because Maryland's impending legalization scheme does not provide for *full* legalization. Even under that partial legalization scheme, some amounts of cannabis will remain illegal to possess: an amount greater than 1.5 ounces but less than 2.5 ounces will be subject to civil penalties, and possession of 2.5 ounces or more will be subject to criminal penalties. 2022 Md. Laws, ch. 26, § 4 (amending CL §§ 5-101, 5-601). Indeed, the crimes mentioned in *Robinson* as providing probable cause to search a vehicle based on the odor of cannabis will all remain crimes under the proposed partial legalization scheme, though the amount of cannabis necessary to trigger criminal penalties for simple possession will increase from 10 grams (about 0.35 ounces) to 2.5 ounces (about 71 grams). *See supra* at 158-59 & nn.9, 11. While this new amount will be about seven times greater than the current criminal amount, 2.5 ounces is

not so much that it could not be concealed in a vehicle.[32]  And the Court's observation that the odor of the drug can indicate criminal activity will remain true, even once the criminal amount of cannabis increases from 10 grams to 2.5 ounces.

We acknowledge, of course, that probable cause "deal[s] with probabilities." *Gates*, 462 U.S. at 231.  As a matter of common sense, we expect that an increase in the amount of cannabis necessary to trigger criminal penalties will lead to an increase in the number of people lawfully possessing and using cannabis.  If so, the level of probability that the odor of cannabis connotes the possession of a criminal amount of cannabis will likely diminish.  Indeed, the Court of Appeals itself has recognized (in the context of the odor of cannabis on a *person*) that a change in the drug's legal status can reduce the certainty that the odor is associated with a crime.  *See In re D.D.*, 479 Md. at 232 (concluding that "partial decriminalization has reduced the level of certainty associated with the odor of [cannabis] on a person from probable cause that the person has committed a crime to reasonable suspicion that the person has committed a crime or is in the process of committing a crime").

But, even if the smell of cannabis becomes less indicative than before of the possession of a criminal amount of cannabis, probable cause does not require an officer to establish by a preponderance of the evidence that the car contains evidence of a crime.  *Freeman*, 249 Md. App. at 301-02.  Probable cause in this context requires only a "fair probability" that evidence of a crime is present, *Robinson*, 451 Md. at 109 (quoting *Harris*, 568 U.S. at 244), not that the odor of cannabis is more likely associated with criminal rather than non-criminal activity.

More importantly, the Court of Appeals has also identified other crimes, besides simple possession, that are associated with the odor of cannabis in vehicles: driving while impaired by cannabis and "crimes involving the distribution of [cannabis]," such as possession of cannabis with the intent to distribute.  *Robinson*, 451 Md. at 133-34.  In other words, even if the possibility that the car might contain evidence of one of these crimes would be insufficient on its own to rise to the level of probable cause, the combined probability that the car contains evidence of at least one of those crimes might provide an officer

---

[32] An ounce of cannabis, sometimes referred to as a "zip of weed," "usually fits comfortably into" a Ziploc bag.  Will Vance, *A Zip of Weed: What the Heck Is It and How Much Does It Cost?*, Magnetic Magazine (Sept. 8, 2022), https://www.magneticmag.com/2022/09/zip-of-weed/.

with probable cause. And if legalization increases the number of people who possess and use the drug, one might reasonably expect an increase in the incidence of driving while impaired by cannabis. *See, e.g.*, National Highway Traffic Safety Admin., *Marijuana-Impaired Driving: A Report to Congress* 17 (2017).[33] Similarly, because the impending legalization scheme does not yet include a legal marketplace for buying and selling recreational cannabis in Maryland, we cannot say that incidents of unlawful distribution of cannabis and the possession of cannabis with intent to distribute are likely to diminish.

In fact, in the absence of a legal marketplace for recreational cannabis, the odor of cannabis coming from a vehicle will presumably still be highly indicative that the car may contain evidence of unlawful distribution, even if the dealer is not among the vehicle's occupants.[34] After all, to lawfully search a vehicle under the Fourth Amendment, an officer need not suspect an occupant of criminal activity; the officer need only have probable cause to believe that the *vehicle* contains contraband or evidence of a crime. *See, e.g.*, *Harris*, 568 U.S. at 243; *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search [of property] is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."); *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (recognizing that this principle applies to warrantless searches of automobiles); 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment*

---

[33] We acknowledge that, in cases of suspected drunk driving, the odor of alcohol may establish reasonable suspicion of impaired driving but not probable cause to search a vehicle. *See, e.g.*, *Ferris v. State*, 355 Md. 356, 391 (1999) ("Bloodshot eyes, in conjunction with the odor of alcohol emanating from the person, would ordinarily provide the police with reasonable suspicion that a driver was under the influence of alcohol."). But, unlike cannabis, there is no amount of alcohol that is illegal for adults to possess. Moreover, there is no crime of possession of alcohol with intent to distribute. Thus, the odor of alcohol alone does not raise the same *overall* level of suspicion of contraband or criminal activity as does the odor of cannabis.

[34] We do not mean to suggest that, beginning July 1, 2023, everyone in possession of recreational cannabis in Maryland will necessarily have purchased it from an illegal dealer in the State; some people will have grown it themselves or have purchased it in another jurisdiction with a legal marketplace for recreational cannabis. But, again, probable cause does not require a more-than-fifty-percent likelihood that evidence of a crime would be found, only a "fair probability." *Gates*, 462 U.S. at 238.

§ 3.1(b) (6th ed. 2020) (recognizing that "probable cause to search a particular place may exist without there also being probable cause to arrest a person who occupies that place," and "there can be probable cause to search a vehicle without there also being probable cause to arrest the owner or operator of that vehicle").[35] Thus, at least until the State has established a legal marketplace for cannabis, the odor of cannabis will still suggest that the car may contain evidence of the crime of illegal distribution.[36]

We acknowledge that some courts in other states have concluded that the odor of cannabis cannot, without more, establish the requisite probable cause when at least some use and possession of the drug is no longer subject to criminal or civil penalties. For example, in Pennsylvania, after lawmakers legalized the possession and use of cannabis for medical purposes, the state supreme court concluded that the odor of cannabis "alone cannot create probable cause to justify a search" of a vehicle. *Barr*, 266 A.3d at 28, 41. The court reasoned that a "lawful activity cannot alone be the basis for probable cause," and "it is simply not a crime for an individual to possess or use [cannabis] if the requirements of" the state's medical cannabis statute "have been satisfied." *Id.* at 43. "Thus," the court concluded, "one's liberty may not be abridged on the sole basis that a law enforcement officer detected the smell of [cannabis], because, to do so, would eliminate individualized suspicion required for probable cause and would misapply the totality-of-the-circumstances test." *Id.*[37]

---

[35] In addition to the possibility that the car will contain evidence of one of the crimes listed in *Robinson*, there is also still at least *some* additional possibility that the odor of cannabis is indicative of the possession of contraband, even if the amount is not criminal to possess. Under the revised statute, possession of an amount greater than 1.5 ounces but less than 2.5 ounces would be a civil violation and that cannabis would thus be contraband. That possibility is surely not enough, on its own, to justify a search of the vehicle but it adds to the overall possibility that the vehicle contains contraband or evidence of a crime.

[36] We need not decide here whether the same would be true once Maryland has established a legal marketplace for the sale of cannabis, though—even then—cannabis will remain evidence of a crime under many circumstances.

[37] In Michigan, another state that has enacted a statute legalizing cannabis use for medical purposes, the intermediate appellate court has said that the odor of burnt cannabis, standing alone, can still establish probable cause to search a vehicle that is in a public place, because the statute does not permit the use of cannabis in public. *See People v. Anthony*, 932 N.W.2d 202, 206-07, 213, 215 (Mich. Ct. App. 2019)

Similarly, the intermediate appellate court of Illinois, where an adult may now legally possess up to 30 grams of cannabis, recently held that "the smell of . . . burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search [a] vehicle." *People v. Stribling*, __ N.E.3d __, 2022 WL 4299289, at *4, *6 (Ill. App. Ct. Sept. 19, 2022). In that case, an officer smelled the odor of burnt cannabis emanating from a vehicle, and the driver said that "someone (he did not state that it was himself) had smoked in the vehicle 'a long time ago.'" *Id.* at *5. Finding this evidence insufficient to establish probable cause to search the vehicle, the court observed that, given the state's decision to legalize possession of some amount of cannabis, the smell of cannabis alone would no longer "lead a reasonable officer to conclude that there was a substantial chance of criminal activity afoot." *Id.* The Court of Appeals of Oregon also reached a similar conclusion, under a provision of the Oregon Constitution which permits a police officer to extend a traffic stop "to conduct a criminal investigation" unrelated to the "purpose of the traffic stop" if the officer has "reasonable suspicion of criminal activity." *State v. Moore*, 488 P.3d 816, 819 (Or. 2021) (discussing Or. Const., Art. I, § 9). The Oregon court held that, because "the possession and transport of [cannabis], in a variety of amounts and forms, is now legal" in the state, even a "very strong odor" of cannabis is "not a specific enough articulation to adequately support reasonable suspicion that [cannabis] [is] therefore present in [a] vehicle in an unlawful quantity." *Id.* at 819-21. Given that "reasonable suspicion" is a lower standard than probable cause, that reasoning suggests that the Oregon court would find that the odor of cannabis no longer provides probable cause to search a vehicle under the Fourth Amendment.[38]

---

(involving an officer who smelled the odor of burnt cannabis coming from a vehicle parked on a public street). But the court has said that the odor of *fresh* (i.e., unburnt) cannabis does not, standing alone, permit a warrantless search of a vehicle, without some "basis to believe that a suspect's actions, i.e., the use or possession of the [cannabis], fall outside the protections of the" statute. *See People v. Moorman*, 952 N.W.2d 597, 601-02 (Mich. Ct. App. 2020) (per curiam) (finding that an officer had probable cause to search a vehicle based on the odor of fresh cannabis and the driver's denial that the vehicle contained any cannabis, because the denial was "inconsistent with [the officer's] testimony that he smelled the odor of fresh [cannabis]" and, thus, suggested that the vehicle contained an amount greater than that allowed under the statute).

[38] Other courts have said that merely *decriminalizing* some use and possession of cannabis means that the odor of the drug, standing alone, no longer establishes probable cause to search a vehicle. In a series of

As the above discussion demonstrates, those courts that have concluded that the odor of cannabis no longer provides probable cause for a search have grounded their decisions in the fact that the odor will often be associated with noncriminal activity. But our Court of Appeals has so far departed from this line of thinking, concluding instead that, because the odor of cannabis is "just as indicative" of *criminal* activity as noncriminal activity, it is reasonable to permit an officer to conduct a search of a vehicle that smells of cannabis. *Robinson*, 451 Md. at 133-34. Indeed, the Court expressly declined to follow the Massachusetts high court's decision in *Overmyer* (which had found the odor of cannabis to be insufficient to provide probable cause even under a decriminalization regime), noting that such a conclusion would have "the effect of precluding all warrantless searches of vehicles based on the odor of [cannabis], which would not be a salutary development in Maryland." *Id.* at 133.[39]

---

cases decided under a then-existing decriminalization scheme, the Supreme Judicial Court of Massachusetts concluded that "a warrantless search is not justified based solely on the smell of [cannabis], whether burnt or unburnt," *Commonwealth v. Overmyer*, 11 N.E.3d 1054, 1059-60 (Mass. 2014), because an officer must suspect "*criminal*, as opposed to merely infractional, conduct," *Commonwealth v. Cruz*, 945 N.E.2d 899, 908-09 (Mass. 2011), and "a human nose can[not] discern reliably the presence of a criminal amount of [cannabis], as distinct from an amount subject only to a civil fine," *Overmyer*, 11 N.E.3d at 1059. Likewise, the Supreme Court of New Hampshire held that, under a decriminalization scheme, the odor of cannabis emanating from a vehicle, standing alone, no longer supports even "reasonable, articulable suspicion that a person possesses an illegal quantity of marijuana." *State v. Perez*, 239 A.3d 975, 980, 986 (N.H. 2020). The New Hampshire court reasoned that "the odor of marijuana may indicate both criminal and non-criminal activity," *id.* at 984, and "the case-by-case nature of the reasonable, articulable suspicion analysis counsels against a per se rule," *id.* at 986. Obviously, those courts would come to the same conclusion under a legalization scheme.

[39] We think it likely that our Court of Appeals would also find the Pennsylvania Supreme Court's decision in *Barr*, which was decided four years after *Robinson*, unpersuasive. As noted above, the *Barr* Court concluded that legalization of cannabis only for medical purposes rendered the odor of cannabis, standing alone, insufficient to establish probable cause to justify a search. *Barr*, 266 A.3d at 28, 41. But that conclusion clashes with *Robinson*, which held that the odor of cannabis still provides probable cause for a search in Maryland, notwithstanding the fact that Maryland law already permitted possession and use of cannabis for medical purposes. *See Robinson*, 451 Md. at 135-37 (recognizing "the ability of eligible persons to possess and/or use [cannabis] for medical purposes," but making no mention of that fact in its analysis of the probable cause issue).

To be sure, the Court of Appeals may ultimately decide that, after partial legalization takes effect, a search based solely on the odor of cannabis is no longer "reasonable"—the touchstone of Fourth Amendment law. That is, the Court could conclude that the partial legalization of cannabis, given that it changes the default treatment of recreational cannabis under Maryland law, is sufficiently different from decriminalization to justify a different result. But, although the Court might ultimately decide the reasoning in *Robinson* should no longer apply, that is for the Court, not for us, to decide. In the meantime, we must faithfully adhere to the logic of that decision. In doing so, we note that the Court expressed concern that prohibiting officers from "conduct[ing] warrantless searches of vehicles based on the odor of [cannabis]" "would permit a myriad of crimes to go undetected." *Id.* The Court's analysis also emphasized that "[w]hether a search is reasonable depends on the public interest versus an individual's right to be free from arbitrary interference" by police. *Id.* at 108. And as the Court explained in subsequent decisions, the search of a vehicle does not raise the same fundamental privacy concerns as the arrest and search of a person, *Lewis*, 470 Md. at 26, because of the "diminished expectation of privacy one has in an automobile," *In re D.D.*, 479 Md. at 228.

The foregoing leads us to believe that, under the impending partial legalization scheme, the Court of Appeals would still likely consider the odor of cannabis, standing alone, sufficient to establish probable cause to search a vehicle, at least until the General Assembly has established a legal marketplace for the sale of cannabis and possibly even afterwards. Although it is possible that the Court could conclude that the certainty associated with the odor of cannabis emanating from a car will diminish from probable cause to mere reasonable suspicion, *cf. In re D.D.*, 479 Md. at 232 (concluding the same with respect to decriminalization's effect on the odor of cannabis emanating from a person), we cannot say that with confidence. The Court has repeatedly emphasized the diminished expectation of privacy in vehicles as compared to persons, *e.g.*, *Lewis*, 470 Md. at 26, and has shown reluctance to preclude all warrantless searches of vehicles based on the odor of cannabis, *Robinson*, 451 Md. at 132-33. Moreover, vehicles could be used by impaired drivers and could easily conceal a criminal amount of cannabis or evidence of illegal distribution or possession of the drug with the intent to distribute it. Collectively, these factors lead us to believe that, under the impending partial legalization scheme, the Court of Appeals would more likely still hold that the odor of cannabis, standing alone, establishes probable cause to search a vehicle.

We hasten to add that the certainty of our opinion is limited by the relative lack of legal authority addressing the effect that partial legalization of cannabis has had on officers' authority to conduct searches based on the odor of cannabis. We also lack a firm idea, from either the legislative history of the 2022 cannabis bills or the public record, of how many Marylanders will likely possess and use cannabis under the impending legalization scheme, how common the odor of cannabis in vehicles might be as a result, and exactly how indicative that odor will be of criminal activity. In addition, the fact that the use of medical cannabis and hemp are legal under certain circumstances could also impact the reasonableness of an officer's belief that the odor of cannabis (or what seems to be cannabis[40]) is indicative of criminality. But none of the Court of Appeals decisions thus far have addressed the impact, if any, that medical cannabis or hemp may have on this question.

In short, our opinion is simply our best effort to predict how the Court of Appeals would rule in an area of the law that remains highly uncertain. Given this uncertainty, police officers should be aware that there is some risk that a court might suppress evidence that an officer obtained in a search of a vehicle based solely on the odor of cannabis.

That said, the Legislature does have some authority to resolve this uncertainty. While the General Assembly cannot legislate what the Fourth Amendment permits, a state does have "power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so." *Cooper v. California*, 386 U.S. 58, 62 (1967). Several other states have

---

[40] As noted above, hemp is legal and distinct from cannabis, but some criminal defendants have argued that the odor of cannabis is indistinguishable from that of hemp. *See, e.g.*, *State v. Teague*, __ S.E.2d __, 2022 WL 16558096, at *3 (N.C. Ct. App. 2022); *Gowen v. State*, 860 S.E.2d 828, 831 (Ga. Ct. App. 2021). We are aware of only two Maryland cases in which a defendant made this argument on appeal. In the first case, the Court of Special Appeals concluded in an unreported decision that the record did not establish "that [cannabis] and hemp emit identical odors such that an officer cannot distinguish between them." *Hall v. State*, No. 1355, Sept. Term, 2021, 2022 WL 4243950, at *4 (Md. Ct. Spec. App. Sept. 15, 2022). We are, of course, not equipped to resolve those sorts of factual questions in our advisory opinions. In the second case, the intermediate appellate court held in an unreported decision that, under *Robinson*, an officer had probable cause to search a vehicle based on what he perceived to be the odor of cannabis. *Jerome v. State*, No. 1855, Sept. Term, 2021, 2022 WL 17337634, at *1 (Md. Ct. Spec. App. Nov. 30, 2022) (per curiam).

enacted legislation prohibiting or limiting police from conducting searches based on the odor of cannabis.[41]   But absent similar legislation in Maryland, it is our opinion that, under the impending legalization scheme, police will likely still have the authority to conduct searches of vehicles based solely on the odor of cannabis.

Like under current law, however, the odor of cannabis coming from a vehicle will not, standing alone, permit police to search the vehicle's occupants.  The Court of Appeals has already made clear that officers must be able to point to something more to justify the arrest and search of an occupant.  *Pacheco*, 465 Md. at 332.  Legalization of some possession and use of cannabis will not disrupt that holding.

As a side note, we think it will make no difference to our analysis whether an officer detects the odor of burnt cannabis or the odor of fresh (i.e., unburnt) cannabis.  Although there is some authority outside Maryland that "the odor of unburnt, rather than burnt, [cannabis] could be more consistent with the presence of larger quantities,"[42] and that the odor of burnt cannabis is more consistent with driving under the influence of the drug,[43] the Court of Appeals has, so far at least, not attributed any special significance to whether an officer smelled fresh or burnt cannabis when the Court has affirmed the authority of police to conduct vehicle searches based solely on the odor of cannabis.  *Compare*

---

[41] *See, e.g.*, Conn. Gen. Stat. Ann. § 54-33p; N.J. Stat. Ann. § 2C:35-10c; N.Y. Penal Law § 222.05(3), (4); Va. Code Ann. § 4.1-1302.  In California, where individuals 21 and older may possess and use up to 28.5 grams of cannabis, the legislature has not explicitly said that the odor of cannabis may not establish probable cause to search a vehicle.  But lawmakers have said that "[c]annabis and cannabis products involved in any way with conduct deemed lawful by [statute] are not contraband nor subject to seizure, and no conduct deemed lawful by [statute] shall constitute the basis for detention, search, or arrest."  Cal. Health & Safety Code § 11362.1(a), (c).  A California appellate court has said that this statute "definitively affects probable cause determinations" and "undercuts the continued viability of" an earlier case that held "that the odor of marijuana alone establishes probable cause."  *People v. Johnson*, 264 Cal. Rptr. 3d 103, 110-11 (Cal. Ct. App. 2020).

[42] *Overmyer*, 11 N.E.3d at 1058 (but going on to say that "it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance"); *see also Zullo v. State*, 205 A.3d 466, 502 (Vt. 2019) (asserting that "the faint smell of burnt [cannabis] is far less probative as to whether a car contains [cannabis] than, say, an overpowering odor of fresh [cannabis] emanating from the trunk of a car").

[43] *State v. Bowen*, 481 P.3d 370, 374 (Or. Ct. App. 2021).

*Robinson*, 451 Md. at 99-106 (holding that officers' detection of a strong odor of "fresh" (i.e., unburnt) cannabis coming from vehicles authorized the search of those vehicles), *with, e.g.*, *Pacheco*, 465 Md. at 318, 330 (recognizing, in a case involving a vehicle that smelled of burnt cannabis, that the odor permitted a search of the vehicle but not, without more, the vehicle's driver).

Finally, although this issue was not specifically mentioned in the Legislature's opinion request, we also note that the impending legalization scheme calls into question the ability of officers to obtain the necessary probable cause to search a vehicle by using dogs trained to detect the odor of cannabis. It is clearly not a "search" under the Fourth Amendment for officers to use their own noses to smell cannabis emanating from a car, because a person has no reasonable expectation of privacy in odors that waft into a public space, such as a highway, where an officer (or any other person) could smell them. *See supra* footnote 20. But a dog's sense of smell is more than 100,000 times stronger than a human's, *see* Reid, *supra*, at 183, allowing a dog to detect odors that may be imperceptible to a person and thus raising different questions about whether a dog sniff intrudes on reasonable expectations of privacy and thereby constitutes a search.

Although (as explained above) the Supreme Court has historically concluded that a dog's sniff is generally not a "search" under the Fourth Amendment—despite the fact that other sense-enhancing techniques can sometimes constitute a search for which probable cause is required, *cf. Kyllo*, 533 U.S. at 34-35—the Court's rationale for that conclusion may be undermined by the partial legalization of cannabis. More specifically, the Supreme Court has said up to this point that dog sniffs generally are not searches because no one has a legitimate expectation of privacy in contraband and trained dogs historically have been used to alert only to the presence or absence of contraband. *Place*, 462 U.S. at 707.[44] But, once Maryland's partial legalization scheme takes effect

---

[44] *See also Andreas*, 463 U.S. at 771 (recognizing that a "search" occurs only when a government inspection "intrude[s] upon a legitimate expectation of privacy"); *Caballes*, 543 U.S. at 409 (concluding that "the use of a well-trained narcotics-detection dog—*one that 'does not expose noncontraband items that otherwise would remain hidden from public view'*— . . . generally does not implicate legitimate privacy interests") (emphasis added) (quoting *Place*, 462 U.S. at 707); 1 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 2.2(g) (6th ed. 2020) (noting "the unique nature of the investigative technique" of using canines, whose sniff can "disclose[] only criminality and nothing

and cannabis in Maryland is no longer contraband in every instance, it will no longer always be true that a dog's sniff will be able to detect only the presence or absence of contraband, as even a specially trained dog cannot tell whether it is smelling a quantity of cannabis that is greater or less than 1.5 ounces. *See, e.g.*, Denise LaVoie, *Since the Nose Doesn't Know Pot Is Now Legal, K-9s Retire*, Associated Press, May 29, 2021, https://apnews.com/article/va-state-wire-police-marijuana-marijuana-legalization-253af1ba6e541060085108e027b367c1 (reporting that police departments in states that have legalized cannabis have retired cannabis-detecting dogs because they "cannot distinguish between a small, legal amount of [cannabis] or a larger, still-illegal amount of the drug"); *see also* Douglas A. Berman & Alex Kreit, *Ensuring Marijuana Reform Is Effective Criminal Justice Reform*, 52 Ariz. St. L.J. 741, 765-66 (2020) (arguing that, "once [cannabis] is no longer considered contraband, the police may no longer be permitted to conduct suspicionless drug dog sniffs using dogs that are trained to detect [cannabis]"). Because such a dog could alert to "noncontraband items" (i.e., lawful amounts of cannabis) "that otherwise would remain hidden from public view," a dog's sniff under those circumstances appears to "implicate legitimate privacy interests." *Caballes*, 543 U.S. at 409.

Thus, based on existing Supreme Court precedent, there is a significant risk that Maryland's appellate courts would conclude that a dog sniff for cannabis is a search. *See Andreas*, 463 U.S. at 771; *see also Maryland v. Macon*, 472 U.S. 463, 469 (1985) ("A search occurs when 'an expectation of privacy that society is prepared to consider reasonable is infringed.'" (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984))); *People v. McKnight*, 446 P.3d 397, 408-10 (Colo. 2019) (holding that a dog sniff is a search that must be supported by probable cause under Colorado law because "persons twenty-one or older may lawfully possess [cannabis] in small amounts" in Colorado and, thus, "a drug-detection dog that alerts to even the slightest amount of marijuana can no longer be said to detect 'only' contraband"); Alex C. Carroll, *Weed, Dogs & Traffic Stops*, 21 Wyo. L. Rev. 1, 6 (2021) (arguing that "a dog sniff conducted during a routine traffic stop is a Fourth Amendment 'search' in states that have legalized marijuana"). And if a dog sniff indeed amounts to a "search" for constitutional purposes under these circumstances, the officer would have to establish probable cause before allowing the dog to sniff the vehicle, as opposed to using the dog sniff to establish

else"); Reid, *supra*, at 183 (noting that, "if a dog is . . . trained to detect ONLY the presence of odor emanating from an illegal substance, then the dog, when it alerts, is detecting a substance that no one has a lawful reason to possess").

probable cause to search the vehicle.[45]  Again, this is a novel area of the law, and the doctrine could potentially evolve.  All we can do for the time being is provide our best advice based on how current precedent might apply to these new circumstances.  But police departments need to be aware that the impending legalization regime may change the way that drug-sniffing dogs— at least those trained to detect cannabis—are viewed under the Fourth Amendment.

### 2.    Searches of Individuals Outside the Vehicle Context

We next consider whether Maryland's impending legalization scheme will affect the authority of police officers to search individuals based on the odor of cannabis outside of the vehicle context.  The Court of Appeals has already held that police cannot, even under current law, arrest and search a person merely because the person smells of cannabis.  *Lewis*, 470 Md. at 17, 23.  In that context, unlike with vehicle searches, the police need probable cause to believe that the *specific person* being arrested has committed a felony or is committing a crime in the officer's presence, and the search involves a greater intrusion of privacy than the search of a vehicle.  *E.g.*, *id.* at 20, 22, 25-26.

In our view, this limitation on searches of persons incident to arrest will remain true once it becomes legal for someone who is at least 21 years old to possess up to 1.5 ounces.  Under that scheme, the reasoning of *Lewis* will still apply: Because "[t]he odor of [cannabis] alone is not indicative of the quantity (if any) of [cannabis] in someone's possession," *id.* at 23, officers will not be able to know whether the scent is associated with a crime or with the lawful use or possession of cannabis; thus, "[a]rresting and

---

[45] It is possible, of course, that an officer could encounter a vehicle occupied only by a driver whom the officer knows to be under 21 and, thus, not entitled to possess any amount of cannabis; in that case, a dog's sniff for cannabis will still detect only the presence or absence of contraband and thus would almost certainly not give rise to a constitutional search under the logic of current precedent.  In addition, it is clear that police could still, even without first establishing probable cause, use a canine trained to detect only those drugs that are illegal in any quantity (such as heroin or cocaine), although that approach would presumably require police departments to re-train police dogs or train new dogs so that they do not alert to the odor of cannabis.  *See* Reid, *supra*, at 208 (asserting that "[l]aw enforcement dog handlers will be the most affected by" the legalization of cannabis, and "police departments . . . will have to train new drug dogs to detect the usual illegal substances, such as heroin, cocaine, and methamphetamine, but exclude the odor of [cannabis]").

searching a person, without a warrant and based exclusively on the odor of [cannabis] on that person's body or breath, [will be] unreasonable and [will] do[] violence to the fundamental privacy expectation in one's body," *id.* at 26. If, however, other facts arouse an officer's suspicions, the odor of cannabis can be considered among the totality of circumstances in determining whether there is probable cause to arrest. *See id.* at 21; *Ransome*, 373 Md. at 105.

Less certain is whether the Court of Appeals would still permit brief investigatory stops based solely on the odor of cannabis coming from a person. The Court of Appeals, in its recent decision about investigatory stops under the current decriminalization regime, said that "partial decriminalization has reduced the level of certainty associated with the odor of [cannabis] on a person from probable cause that the person has committed a crime to reasonable suspicion that the person has committed a crime or is in the process of committing a crime." *In re D.D.*, 479 Md. at 232. The Court could well conclude that partial legalization also "change[s] the . . . landscape significantly," *id.* at 225, further reducing an officer's level of certainty about whether the odor of cannabis is indicative of criminal activity. After all, the Court has recognized that reasonable suspicion cannot depend on factors which are both consistent with innocent behavior and "too commonplace to be probative in tending to show criminal activity." *Ferris*, 355 Md. at 386-87. "[F]actual circumstances which 'describe a very large category of presumably innocent travelers' cannot, in and of themselves, justify a seizure." *Id.* (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)). Thus, it may be that the legalization of some possession and use of cannabis will make the odor of cannabis so common as to be legally insufficient to support a finding of even reasonable suspicion. *Cf. Moore*, 488 P.3d at 819-21 (concluding, in light of a state law permitting "the possession and transport of [cannabis], in a variety of amounts and forms," that even a "very strong odor" of cannabis is "not a specific enough articulation to adequately support reasonable suspicion that [cannabis] [is] therefore present in [a] vehicle in an unlawful quantity").

On the other hand, the Court in *In re D.D.* described a stop as "a relatively minor intrusion" on one's "freedom of movement" and emphasized "[t]he public interest in investigating and prosecuting criminal offenses" and the Court's desire to avoid "significantly hamper[ing] the legitimate investigation of criminal activity in Maryland." 479 Md. at 233, 238, 241. The Court also reaffirmed "key language" from *Robinson* "that the odor of [cannabis] still provides evidence of a crime," "even if it may not

rise to the level of probable cause in every situation." *Id.* at 235. As already noted, the relevant crimes identified in *Robinson* (possession of a criminal amount of cannabis and distribution crimes) will remain crimes under the impending legalization scheme. But perhaps most significantly, the Court observed that "it would be peculiar if the odor of [cannabis] was sufficient to meet the higher standard of probable cause needed to search a vehicle, but insufficient to meet the lower standard of reasonable suspicion needed to briefly stop a person on the street." *Id.* at 236. If we are correct that, under the legalization scheme, the odor of cannabis will still authorize officers to search a vehicle, then it seems likely that the Court of Appeals would hold that officers still have the authority to briefly detain someone who smells of cannabis.

As the Court emphasized in *In re D.D.*, however, any detention will have to "be brief, especially in light of the reality that many individuals who choose to possess [cannabis] do so under the criminal threshold." *Id.* at 233-34. "[I]f the officer does not quickly obtain additional information that provides probable cause to believe that the person has committed a . . . criminal offense, the officer" will have to "allow the person to go on their way." *Id.* at 233.

## III
## Conclusion

Although by no means clear, it is our opinion that, under the impending legalization of some use and possession of cannabis, the Court of Appeals would more likely hold that police officers can still search a vehicle that smells of the drug. But the odor of cannabis emanating from a vehicle will not, without more, permit a police officer to search the vehicle's occupants. The partial legalization of cannabis also calls into question the use of drug-sniffing dogs to establish probable cause for a vehicle search, if those dogs are trained to detect cannabis. Beyond the vehicle context, the odor of cannabis coming from a person, without more, will not authorize a police officer to arrest and search that person, but the odor will likely allow an officer to briefly stop the person to investigate whether they have a criminal amount of cannabis.

<div style="margin-left:40%">

Brian E. Frosh
Attorney General of Maryland

Rachel A. Simmonsen
Assistant Attorney General

</div>

Patrick B. Hughes
Chief Counsel, Opinions and Advice